UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TORRANCE JONES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 13-0123 (TSC) |
| | : | |
| DRUG ENFORCEMENT ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Renewed Motion for Summary Judgment, ECF No. 18.  For the reasons discussed below, the motion will be granted.

### I.  BACKGROUND

In April 1996, plaintiff was charged with conspiracy to possess with intent to distribute cocaine and cocaine base, possession with intent to distribute cocaine, and possession with intent to distribute cocaine base.  Complaint ("Compl.") at 2.  A jury found plaintiff guilty on all counts.  *Id.*; *see United States v. Jones*, 165 F.3d 912 (4th Cir. 1998) (per curiam) (Table), *cert. denied*, 526 U.S. 1126 (1999).

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552a, and demands the release of records maintained by the Drug Enforcement Administration ("DEA").  Specifically, plaintiff seeks "statements that [Assistant United States Attorney]

Christine Hamilton and Raleigh Police Detectives Kennon and A.J. Wisniewski gained during interviews in United States v. Torrance Jones, Case No. 5:96-CR-1-BO." Memorandum of Points and Authorities in Support of Defendant's Renewed Motion for Summary Judgment, ECF No. 18-1 ("Def.'s Mem."), Declaration of William C. Little, Jr., ECF No. 18-2 ("First Little Decl."), Exhibit ("Ex.") A (Freedom of Information and Privacy Act [Request] dated May 29, 2010).  He identifies the statements as follows:

> Richard Mann on May 15, 1996; Michael Rubel on July 29, 1996;
> Ricky Draper on September 15, 1996; Bernard Sinclair on September 15, 1996;
> Daniel Dunning on July 29, 1996; and Brian Eversole on July 29, 1996.

First Little Decl., Ex. A.  According to plaintiff, the DEA has no valid reason for withholding the statements of Mann, Rubel, Draper, Sinclair, Dunning and Eversole because these "statements were testified to during [p]laintiff's trial and sentencing hearing," and thus already "have been released into the public domain through judicial proceedings."  Compl. at 5.

## II.  DISCUSSION

### A.  *Summary Judgment in a FOIA Case*

Defendant moves for summary judgment, *see* Def.'s Mem. at 2, arguing that it conducted an adequate search for records responsive to plaintiff's FOIA request, *see generally id*. at 6-11, even if the search did not yield records related to Mann, Rubel, Draper, Sinclair, Dunning and Eversole, *see id*. at 10-11.

A FOIA case typically is resolved on summary judgment.  *See Paxson v. U.S. Dep't of Justice*, __ F. Supp. 2d __, __, 2014 WL 1921323, at *2 (D.D.C. May 14, 2014) (citations omitted).  Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a). "At the summary judgment stage, where the agency has the burden to show that it acted in accordance with the [FOIA], the court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (brackets, internal quotation marks and citations omitted). An agency may obtain summary judgment for its "no records" response if it demonstrates "that it located no records responsive to plaintiff's request after a reasonable search using 'methods reasonably expected to produce the information requested.'" *Davidson v. EPA*, 121 F. Supp. 2d 38, 39 (D.D.C. 2000) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). As long as the agency demonstrates that its search was reasonable, neither its "failure . . . to turn up one specific document," *Iturralde v. Comptroller of Currency,* 315 F.3d 311, 315 (D.C. Cir. 2003), nor a requester's "mere speculation that as yet uncovered documents might exist," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991), renders the search inadequate.

### B. The DEA's Searches Were Reasonable

The DEA construed plaintiff's FOIA request as one "for criminal investigative records held by DEA that referenced or related to plaintiff and several third parties." First Little Decl. ¶ 17. Plaintiff also "specifically [sought] statements gained by AUSA Christine Hamilton and Raleigh Police Detectives Kennon and A.J. Wisniewski related to a criminal prosecution for which he provided a criminal case docket number." Def.'s Mem., Second Supplemental Declaration of William C. Little, Jr., ECF No. 18-4 ("2d Supp. Little Decl.") ¶ 3.

"Criminal investigative records maintained by DEA about individuals that are of investigative interest are reasonably likely to be found in the DEA Investigative Reporting and Filing System ('IRFS')." First Little Decl. ¶ 18. In IRFS the DEA maintains "all administrative, general, and criminal investigative files compiled . . . for law enforcement purposes." *Id*. ¶ 20. One searches IFRS using the Narcotics and Dangerous Drugs Information System ("NADDIS"), which the declarant describes as "the index to and the practical means by which DEA retrieves investigative reports and information from IRFS." *Id*.

The declarant explains that the "DEA does not maintain separate dossier investigative case files on every individual or entity that is of investigative interest." 2d Supp. Little Decl. ¶ 7. The file's title "generally [is] the name of the principal suspect violator . . . known to DEA at the time the file is opened." *Id*. Information gathered during the course of an investigation "is systematically included in a single investigative case file," and a file "routinely contain[s] information related to several individuals." *Id*.

An investigative case file in IRFS contains several forms, including "the DEA Report of Investigation (ROI), DEA Form 6, and continuation page, Form 6a [.]" 2d Supp. Little Decl. ¶ 8. If a DEA Special Agent or task force officer acting under the DEA's authority conducted a debriefing, this event "would be memorialized in a DEA Form-6." *Id*. ¶ 9. And if a DEA Special Agent or task force member generated "a report of a debriefing or proffer statement . . . , the individuals mentioned in the report would be indexed in NADDIS." *Id*.

The declarant describes a NADDIS query as follows:

> 22. A NADDIS query is a two-step process. In conducting a NADDIS query, the operator enters the complete name of an individual, a social security number and date of birth. The system

4

> return is a listing of the individual name(s) meeting the parameters of the information entered.
>
> 23.  If the information entered is complete and correct, the listing returned will consist of a single name with a NADDIS number.  A single NADDIS number is assigned to every individual or entity that is of investigative interest, to include suspects and witnesses.  [A] NADDIS number[ is] unique to the individual . . . to whom the number is assigned.
>
> 24.  The second step of the process of identifying investigative case files in which an individual is mentioned is the entering of the NADDIS number.  The result is a system compilation of information, including a listing of the investigative case file number(s) in which information related to the individual is likely to be found.

2d Supp. Little Decl. ¶¶ 22-24.  The results of a NADDIS query, then, include the investigative file number or numbers and the particular ROI(s) containing information about a particular individual or subject of an investigation.  *Id.* ¶ 10.

A NADDIS search using plaintiff's name, Social Security number and date of birth as search terms yielded "one . . . investigative case file number[] in which information regarding plaintiff could be found."  First Little Decl. ¶ 27.  "Because of the manner in which DEA investigative files are structured," the declarant explained that "it is not reasonably likely that any report or document related to plaintiff would be found in any other file or investigative case file, or filing system other than the single investigative case file identified by NADDIS and which is maintained in IRFS."  Def.'s Mem., Supplemental Declaration of William C. Little, Jr., ECF No. 18-3 ("Supp. Little Decl.") ¶ 7.  Further, the declarant explained, "based on the structure of the system, information related to plaintiff, including statements by sources and other individuals, would be contained in the single investigative case file identified in NADDIS as containing information related to plaintiff."  2d Supp. Little Decl. ¶ 13.

A search of this particular investigative case file yielded 26 pages of records "consisting of investigative reports and other documents . . . that contained plaintiff's name or could be identified as relating to plaintiff or the investigation" of his criminal activities.  First Little Decl. ¶ 28; *see* 2d Supp. Little Decl. ¶¶ 15-16.  Relying on Exemptions 6, 7(C), 7(D), 7(E), and 7(F), the DEA released 23 pages of records in part, released two pages in full, and withheld one page in full.  2d Supp. Little Decl. ¶ 17.[1]  "No report or record contained in the file was a proffer statement that an AUSA Christine Hamilton, a Raleigh Police Detectives Kennon or an A.J. Wisniewski gained during interviews in *United States v. Torrance Jones*, case No.: 5:96-CR-79-BO of a Richard Mann on May 15, 1996, a Michael Rubel on July 29, 1996, a Ricky Draper on September 15, 1996, a Bernard Sinclair on September 15, 1996, a Daniel Dunning on July 29, 1996 or a Brian Eversole on July 29, 1996."  2d Supp. Little Decl. ¶ 20.

According to the declarant, a search for such information "would be futile, based on the lack of identifying information provided in plaintiff's request related to Michael Rubel, Ricky Draper, Bernard Sinclair, Daniel Dunning and Brian Eversole and the fact that only a single investigative case file was identified as having information related to plaintiff." *Id*. ¶ 21.  "[I]n order to positively identify an individual and a file in IRFS that contains information about an individual, the complete name, social security number and date of birth is necessary." *Id*. ¶ 25.  Otherwise, "[i]f a complete name, social security number and date of birth are not entered, the system return will indicate no qualifying information or a listing of individuals in the system with the same last name and, in alphabetic order, the first and middle names." *Id*.  Where, as here, a requester does not supply either "a release authorization, proof of death, a court order, or

---

[1]   The Court does not construe the complaint as bringing a challenge to the DEA's response to plaintiff's FOIA request for information about himself, *see* Memorandum Opinion, ECF No. 17, at 14, in light of plaintiff's singular focus on statements of his co-defendants that the DEA allegedly withholds in violation of the FOIA, *see* Compl. at 1.

information that would overcome any third-party privacy interests," the declarant explains that the DEA lacks information by which "to positively identify the individuals mentioned in plaintiff's request." *Id*. ¶ 26.

Notwithstanding plaintiff's failure to supply identifying information, *see id*. ¶¶ 27, 29, DEA staff searched NADDIS "using the names provided by plaintiff in his request," *id*. ¶ 29. The declarant described the search results as follows:

> [F]or one (1) of the individuals mentioned, there was a listing of 26 names, for another, three (3) names, for two (2) others, two (2) names, and another "no qualifying information." For the remaining individual which resulted in a return of a single name, the listing indicated the file that was searched in response to the NADDIS query performed using plaintiff's identifying information.

*Id*. ¶ 30. The DEA had no additional information by which to positively identify these individuals or file(s) in IRFS containing information about these individuals. *See id*. ¶ 25. And "other than the file already searched, there are no other files reasonably likely to contain information responsive to plaintiff's request" for the statements of Mann, Rubel, Draper, Sinclair, Dunning and Eversole. *Id*. ¶ 31.

Plaintiff based his first challenge to the DEA's searches on a misinterpretation of the Court's prior ruling, which stated: "With respect to the DEA's Glomar response . . . the agency's motion for summary judgment [was] denied without prejudice." Memorandum Opinion, ECF No. 17, at 7. In other words, the DEA could not rest on its Glomar response – it could not refuse to confirm or deny the existence of records responsive to plaintiff's FOIA request for the co-defendants' statements. The ruling did not, as plaintiff suggests, set forth "specific instructions . . . to turn over the records as to Mr. Rubel, Mr. Mann, and Mr. Draper[.]"

Memorandum of Law and Fact in Support of Opposition to Defendant's Renewed Motion for Summary Judgment, ECF No. 22 ("Pl.'s Opp'n") at 2.

Next, plaintiff argues that the DEA was obligated to search its databases using the co-defendants' names as search terms. *Id*. at 3. Defendant demonstrates that IRFS is the only database reasonably likely to hold the desired information. It also demonstrates that plaintiff's desire that the DEA "search the NADDIS for [his] co-defendants," *id*. at 5, has been fulfilled, *see* 2d Supp. Little Decl. ¶¶ 29-30.

Lastly, plaintiff argues that an adequate search by the DEA required that its staff contact "specific individuals," namely the prosecutor, Raleigh, North Carolina detectives, and plaintiff's probation officer, in the event that these individuals had copies of the desired statements. Pl.'s Opp'n at 4. None of these individuals is an employee or officer of the DEA, and plaintiff cites no authority for the proposition that an agency is obligated to conduct a search for information in systems of records that that agency does not maintain.

### III.  CONCLUSION

The DEA demonstrates that its searches for records responsive to plaintiff's FOIA request were reasonable under the circumstances and that it complied with its obligations under the FOIA. Defendant's Renewed Motion for Summary Judgment therefore will be granted. An Order accompanies this Memorandum Opinion.

DATE: March 20, 2015                                          /s/
                                                              TANYA S. CHUTKAN
                                                              United States District Judge